IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00910-MEH

MARTHA MARTIN,

    Plaintiff,

v.

PURE SPECTRUM CBD, LLC, and
BRADY BELL,

    Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendants' "Motion for Summary Judgment" ("Motion"). ECF 56. The Motion is fully briefed, and the Court finds that oral argument would not materially assist the Court in adjudicating the Motion. For the reasons that follow, the Motion is granted in part and denied in part.

## BACKGROUND

    Plaintiff is a professional graphic designer who worked with Defendant Brady Bell, the Founder and Chief Executive Officer of Defendant Pure Spectrum CBD, LLC ("Pure Spectrum"). ECF 61, Affidavit of Plaintiff, at 1–2, ¶¶ 1–2, 6. She worked with Defendants to create product branding, logo design, packaging design, advertising, and marketing for Pure Spectrum's CBD-related products. *Id.* Disputes arose because Plaintiff felt undercompensated for the work she did, including the withholding of a promised three percent equity interest in Pure Spectrum. ECF 34, Am. Compl. ¶ 11. Plaintiff filed suit on April 2, 2020. ECF 1, Compl. On September 7, 2020, she

filed the operative Amended Complaint. ECF 34. Plaintiff brings six claims against Defendants: (1) copyright infringement pursuant to 17 U.S.C. § 101 *et seq*.; (2) securities fraud for violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5); (3) breach of fiduciary duties; (4) breach of contract; (5) unjust enrichment; and (6) fraud and conspiracy to commit fraud. Defendants have moved for summary judgment on all claims.

## STANDARDS OF REVIEW

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id*. at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only

2

evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

As a preface to these findings, the Court notes that Rule 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . ." Fed. R. Civ. P. 56(c)(1)(A). Here, with the exception of two

exhibits, Defendants cite only to Plaintiff's Amended Complaint for their claims that certain facts are undisputed. Although Defendants may not have supported their facts with citations to evidence, the Court may treat the cited portions of the Amended Complaint as undisputed (i.e., admitted) for purposes of the Motion. Fed. R. Civ. P. 56(e)(2) (providing that "[i]f a party fails to properly support an assertion of fact . . . the court may: . . . consider the fact undisputed for purposes of the motion"). On that basis, the Court finds the following undisputed, material facts:

1. Plaintiff began working for Pure Spectrum in November 2016 as an independent contractor on a per-project basis. Am. Compl. ¶ 13.

2. Beginning in February 2018, Pure Spectrum started paying Plaintiff a monthly retainer, which excluded charges for preparing new packaging designs. *Id.* ¶ 14.

3. In September 2018, Plaintiff submitted a proposal to Pure Spectrum that specifically delineated her charges for preparing five new packaging designs that Pure Spectrum wanted. *Id.* ¶ 15.

4. In early October 2018, Mr. Bell mentioned to Plaintiff that he would like to award her an equity interest in Pure Spectrum "for the contributions she had already made to the company." *Id.* ¶ 18.[1]

5. In a meeting held on October 7, 2018, Dan Huerter, the then-Chief Operating Officer of Pure Spectrum, proposed that Plaintiff prepare new packaging designs and a few "loose-end" projects in exchange for a graduated monthly payment beginning at $3,000 and working up to $5,000. *Id.* ¶ 21; ECF 62, Affidavit of Dan Huerter, at 3–4, ¶ 8.

---

[1] Defendants assert that Mr. Bell promised to *give* (as opposed to award) Plaintiff the equity interest. Defendants' statement of undisputed facts only cites to Paragraph 18 of the Amended Complaint. Mot. at 2, ¶ 4. That paragraph does not contain the word "give."

6. Mr. Huerter and Plaintiff agreed that she would be Pure Spectrum's "ultimate authority (and would have ultimate say) on issues relating to the use and implementation of her creative work . . ." ECF 62 at 3, ¶ 8(b); *see also* ECF 61 at 3–4, ¶ 7.

7. They also agreed that Plaintiff "would receive a 3% Class A equity share of [Pure Spectrum], vesting that day." ECF 62 at 3, ¶ 8(c); Am. Compl. ¶ 21; *see also* ECF 61 at 4, ¶ 9.

8. Mr. Bell indicated to Plaintiff at various times that the three percent equity interest in Pure Spectrum was "fully vested" and "etched in stone." Am. Compl. ¶¶ 22, 41; ECF 56-1, Email from Mr. Bell to Plaintiff, at 1.

9. Mr. Bell referenced this equity interest as a "gift." Am. Compl. ¶ 41 ("He also referenced it as a completed 'gift.'"); ECF 56-1 at 1 ("This was my gift to you.").

10. Mr. Bell told Plaintiff that the equity interest was "in recognition of [her] extensive efforts, work, contributions and loyalty to Pure Spectrum." Am. Compl. ¶ 97.

11. Plaintiff never received documentation confirming the equity interest or evidencing actual conveyance of the three percent ownership interest in Pure Spectrum. *Id.* ¶¶ 24, 32, 118(a), 142.

12. Mr. Bell never sent Plaintiff a copy of Pure Spectrum's Operating Agreement. *Id.* ¶¶ 97(d)(i), 111, 124(k), 131, 142.

13. On April 19, 2019, Mr. Bell informed Plaintiff that she failed to complete her agreed scope of work. *Id.* ¶ 70.[2]

14. In April 2019, Plaintiff told Linda Jenny, the newly-hired Chief Operating Officer of Pure Spectrum, that she owned all of the creative works that she had prepared for Pure Spectrum. *Id.* ¶¶ 54, 66.

---

[2] Defendant only cites to Paragraph 70 of the Amended Complaint for its version of the undisputed statement of fact. Mot. at 3, ¶ 9. But Paragraph 70 does not directly state Mr. Bell "was displeased with [Plaintiff's] performance" or that he "revoked the gift." Am. Compl. ¶ 70.

15. On May 29, 2019, Plaintiff told Mr. Bell and Pure Spectrum that "no one associated with Defendant Pure Spectrum had Plaintiff's permission to use any artwork or creative files that Plaintiff had created." *Id.* ¶ 73.

16. Pure Spectrum continued to use some of the creative works authored by Plaintiff for product packaging and advertising from May 29, 2019 until September 2019. That is when Pure Spectrum completely stopped using all of her creative works and replaced them with new designs authored by Pure Spectrum's new designer, The Shipyard Marketing Engineers. ECF 57, Decl. of Brady Bell, at 2, ¶ 7.

17. Pure Spectrum terminated Plaintiff's employment on May 29, 2019. ECF 57 at 2, ¶ 6.

## ANALYSIS

As mentioned earlier, Plaintiff brings six claims in this action: (1) copyright infringement; (2) securities fraud; (3) breach of fiduciary duties; (4) breach of contract; (5) unjust enrichment; and (6) fraud and conspiracy to commit fraud. The Court will address each in turn.

### I. Copyright Infringement

Plaintiff alleges that she has created numerous works for Pure Spectrum for which she is the owner and which Pure Spectrum used without her permission. Am. Compl. ¶¶ 48, 76–79, 84–86. Plaintiff claims the unauthorized use of these works constitutes copyright infringement. *Id.* ¶¶ 78–80, 84–85. Defendants argue they had a non-exclusive license to use Plaintiff's works that defeats Plaintiff's claim. Mot. at 5.

The elements of a copyright infringement claim are: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1189 (D. Colo. 2016) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "Section 204(a) of the Copyright Act provides

6

that '[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.'" *Millennium, Inc. v. Sai Denver M, Inc.*, No. 14-cv-01118-KLM, 2015 WL 1816479, at *4 (D. Colo. Apr. 20, 2015) (quoting 17 U.S.C. § 204(a)). The Copyright Act "defines 'transfer of copyright ownership' to include exclusive licenses, but expressly excludes nonexclusive licenses." *Id.* (quoting 17 U.S.C. § 101). Therefore, although Section 204(a) generally operates to invalidate transfers of copyright ownership not in writing, "Section 101 explicitly removes a nonexclusive license from" that requirement. *Id.* (citing *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)).

A license (or permission more generally) is an affirmative defense to copyright infringement claims. *Id.* ("[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement."); *see also I.A.E., Inc.*, 74 F.3d at 775. A defendant may assert the existence of an implied license "'where one party created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'" *Millennium, Inc.*, 2015 WL 1816479, at *4 (quoting *Malibu Media, LLC v. Batz*, No. 12-cv-01953-WYD-MEH, 2013 WL 2120412, at *5 (D. Colo. Apr. 5, 2013)). Although the Tenth Circuit has not yet ruled on the issue of an implied license in this context, this District utilizes a three-part test developed by other circuits for an implied license: (1) a person (the licensee) requests the creation of a work; (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute his work. *Malibu Media*, 2013 WL 2120412, at *5 (quoting *Atkins v. Fischer*, 331 F.3d 988, 991–92 (D.C. Cir. 2003)). Absent consideration, implied licenses are revocable; if supported by

7

consideration, they are irrevocable. *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008).

"A 'nonexclusive license may be granted orally, or may even be implied from conduct.'" *Xtomic, LLC v. Active Release Techniques, LLC*, 460 F. Supp. 3d 1147, 1152 (D. Colo. 2020). A defendant claiming an implied, nonexclusive license bears the burden of proving the existence of the license. *Id.* at 1154. Then, "the plaintiff bears the burden of proving that the defendant's use of a copyrighted work exceeded the scope of that license.'" *Boatman v. U.S. Racquetball Ass'n*, 33 F. Supp. 3d 1264, 1271 (D. Colo. 2014).

Here, it is undisputed that Defendants requested work from Plaintiff. Am. Compl. ¶¶ 14–15, 21; ECF 62 at 3–4, ¶ 8. Thus, the Court finds the first part of the test satisfied. The parties' dispute revolves around the second and third parts of the test. As to the issue of whether Plaintiff delivered the work to Defendants, Plaintiff argues that she "never 'delivered' control of her created designs to Defendants—but maintained exclusive control over *all* of her creative designs at all times." Resp. at 8 (emphasis in original). Yet, the undisputed facts show that Plaintiff did not create these works in a vacuum; instead, she created them at the behest of Defendants. She initially provided her professional services, excluding the creation of new product packaging designs. ECF 61 at 2, ¶ 3. Plaintiff met with Defendants in early September 2018 to "come up with ideas to redesign the retail space, and discuss five (5) new product labels they needed." *Id.* ¶ 4. Then, at the October 2018 meeting, Plaintiff agreed to create a "number of new packaging designs and a few "lo[o]se-ends" projects that [Defendants] wanted . . ." Am. Compl. ¶ 21; ECF 62 at 3–4, ¶ 8. The record does not provide any indication that Defendants never received the works Plaintiff created. To the contrary, Plaintiff admits she was paid a graduated monthly retainer for these works (even if she does dispute whether such compensation was adequate). ECF 62 at 4, ¶ 10.

Accordingly, the Court finds that Plaintiff created and delivered the disputed works to Defendants, which satisfies the second element of the test.

Even if both the first and second elements are satisfied, for an implied license to exist, the licensor must intend that the licensee copy and distribute the work. *Malibu Media*, 2013 WL 2120412, at * 5. "Without intent, there can be no implied license." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). "Courts look to objective factors to determine a party's intent, including 'deposition testimony and whether the copyrighted material was delivered without warning that its further use would constitute copyright infringement.'" *Millennium, Inc.*, 2015 WL 1816479, at *6 (quoting *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009) (internal quotation marks omitted)). "The relevant intent is the licensor's objective intent at the time of creation and delivery of [the Work] as manifested by the parties' conduct." *Gagnon,* 542 F.3d at 756 (citing *Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 559 n.6 (9th Cir. 1990)). Courts have looked to the following factors in determining whether the intent to grant a license exists:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts, such as the standard AIA contract, providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 41 (1st Cir. 2003); *see also Gagnon*, 542 F.3d at 756.

Here, there is contradictory evidence on what Plaintiff intended for her creative works. In her affidavit, Plaintiff avers that she did not give Pure Spectrum "the creative rights to alter or otherwise use my artwork without [her] approval, in advance." ECF 61 at 2–3, ¶ 5. She claimed to "have always been careful to manage how [her] designs are used." *Id.* at 3, ¶ 5. Mr. Huerter even

admitted that he reached an agreement with Plaintiff that she would be Pure Spectrum's "ultimate authority (and would have ultimate say) on issues relating to the use and implementation of her creative work into [Defendants'] marketing plan . . ." ECF 62 at 3, ¶ 8(b). However, Plaintiff seemingly acknowledged in an email to Mr. Bell that "[t]ypically clients own the work created for them. At least that's how [she] operate[s]." ECF 56-2 at 1. Hence, there appears to be a dispute of fact concerning what control Plaintiff exercised over the work.

What is not in dispute, though, is that objective facts demonstrate an intent for Defendants to use Plaintiff's works. Among other services, Plaintiff created multiple new product packaging designs, developed and designed multiple media campaigns for email, print, and online distribution, generated copious amounts of social media content, and developed and directed short animations for Defendants' products. ECF 61 at 4–5, ¶ 10. It is reasonable that Defendants would use and distribute such products for its business. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235–36 (11th Cir. 2010) (finding an implied license because, in part, "it is reasonable to infer that" licensor created content that was meant for distribution); *see also Millennium, Inc.*, 2015 WL 1816479, at *7 (finding intent satisfied when the content creator "clearly hoped that Defendant would use his Ad and create a good working relationship"). Because Plaintiff created her works specifically for Defendant, and such works were meant to be used and distributed as part of Defendants' business and marketing, the Court finds that an implied license existed. *Latimer*, 601 F.3d at 1236.

Plaintiff argues that even if an implied license existed, she revoked that license in her April 2019 meeting with Ms. Jenny. Resp. at 9; Am. Compl. ¶¶ 54, 66. As the Court already mentioned, a license unsupported by consideration is revocable. *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1150 (W.D. Mo. 2010). But there is no dispute in this case that Defendants paid

consideration. Plaintiff admits to receiving a graduated monthly retainer. ECF 61 at 4, ¶ 9. Plaintiff argues—and she may be right—that she is owed more than the money she received. *Id.* at 5, ¶ 11. Yet, that is a breach of contract question, not a question of implied license. *Millennium, Inc.*, 2015 WL 1816479, at *9 (finding "that the implied nonexclusive license in this case was not invalidated by any failure to pay for the [work] or delay in payment . . ."); *see also Effects Associates, Inc.*, 908 F.2d at 559 n.7 (refusing to "construe payment in full as a condition precedent to implying a license"). Having received consideration, the implied license in this case is irrevocable.[3] *Xtomic, LLC*, 460 F. Supp. 3d at 1155 (holding that because defendants paid consideration, the "licenses "are irrevocable, i.e., they are granted in perpetuity."). Thus, Plaintiff could not have revoked the license in April 2019.

Because the Court finds that Defendants had a nonexclusive, implied license to Plaintiff's works at issue in this case, Plaintiff's claim for copyright infringement fails. Defendants are entitled to summary judgment on this claim.

**II.    Securities Fraud**

Plaintiff also brings a claim against Defendants for alleged securities fraud. Specifically, Plaintiff alleges that Defendants made false and misleading statements about her equity interest in Pure Spectrum. Am. Compl. ¶¶ 96–98. In so alleging, Plaintiff argues that the conveyance of interest in Pure Spectrum qualifies as the "sale" of a "security" under 15 U.S.C. § 78j(b). Am. Compl. ¶ 105. Defendants reject this characterization, arguing that the promise to give Plaintiff interest in Pure Spectrum was an undelivered, revocable gift. Mot. at 7.

---

[3] Plaintiff speculates that if this were true, why would Defendants "have to re-brand?" Resp. at 7. However, Plaintiff has not cited authority that a later decision to abandon use of a licensed work influences whether there was an implied license in the first instance.

A gift is "a voluntary transfer of property to another without consideration." *City of Aurora v. Pub. Utilities Comm'n of State of Colo.*, 785 P.2d 1280, 1288 (Colo. 1990). Consideration is the key element that differentiates between contracts and gifts. *See Denver Pressed Brick Co. v. Le Fevre*, 138 P. 434, 436 (Colo. 1913) ("A promise to make a gift lacks consideration and is unenforceable.") (citation omitted). When a gift is completed, that gift is irrevocable; conversely, an uncompleted gift is revocable. *Bunnell v. Iverson*, 364 P.2d 385, 388 (Colo. 1961) (recognizing that "once the gift which is clear and definite in its terms is completed following acceptance and assumption of dominion by the donee it is not subject to revocation"). "In order to be effective as a gift, the donor must do everything reasonably permitted by the nature of the property and the circumstances of the transaction in parting with all incidences of ownership." *Visintainer v. Comm'r Internal Revenue*, 187 F.2d 519, 523 (10th Cir. 1951). In other words, "[a] delivery of possession, with intent to pass a present right of property, is a completed gift." *Thomas v. Thomas*, 197 P. 243, 244 (Colo. 1921).

Defendants contend that Mr. Brady's promise to give Plaintiff a three percent equity interest in Pure Spectrum was motivated by his desire to recognize Plaintiff for past contributions. Mot. at 9 (citing Am. Compl. ¶¶ 18, 21). Put differently, the equity interest was not meant to be compensation for future work. *Id.* (citing Am. Compl. ¶¶ 14, 21). Defendants assert that Mr. Bell intended the transfer of shares to be gratuitous and thus unsupported by consideration. *Id.* Further, Defendants argue that the gift was never delivered because Pure Spectrum never sent Plaintiff "the papers that she would have had to sign to complete the transfer . . ." *Id.* So, Defendants argue, not only was the equity interest a gift, but it was an uncompleted gift that could be (and was) revoked. *Id.* Plaintiff vehemently opposes these contentions, rejecting entirely the notion that the interest was intended as a gift. Resp. at 10–11.

The record is muddied on whether the equity interest was a gift. On the one hand, Mr. Bell declared in his January 2019 email to Plaintiff that the transfer of equity was his "gift" to Plaintiff. ECF 57 at 1. Mr. Bell did so "in recognition of Plaintiff's extensive efforts, work, contributions and loyalty to Pure Spectrum." Am. Compl. ¶ 97. On the other hand, the idea of giving Plaintiff an equity interest arose during the parties' September and October 2018 meetings. ECF 62 ¶ 7. On October 7, 2018, Plaintiff and Defendants agreed to a new compensation agreement. *Id.* ¶ 8. Part of that agreement included for Plaintiff to "receive a 3% Class A equity share of the Company, vesting that day." *Id.* ¶ 8(c). Mr. Bell confirmed that "vesting" in later emails. ECF 56-1 at 1 ("[Y]our 3% is already etched into stone. Period. Let this email be a legal draft of the percentage you own in Pure Spectrum. My word is as good as it gets."). The question is whether that equity was meant to be part of the compensation agreement (i.e., additional consideration for Plaintiff's future work for Pure Spectrum) or a separate, gratuitous gift for past performance.

Although the record does not provide a clear answer, the Court must view the evidence in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc.*, 431 F.3d at 1255. In that light, the Court does not find that Defendants have met their burden on summary judgment for establishing a gift. It is undisputed that the idea of giving Plaintiff an equity interest arose in the context of Plaintiff negotiating a new compensation agreement. During her conversations with Defendants, Plaintiff understood that Pure Spectrum did not 'have the cash flow to afford [her services]." ECF 61 at 3, ¶ 6. So, "[t]he option of paying [her], in part with a percentage of equity ownership in" Pure Spectrum excited Plaintiff. *Id.* In other words, Plaintiff expected part of her pay (i.e., consideration) to include the equity interest. At the very best for

Defendants, then, the idea that the equity interest was pay for past performance is a disputed question of fact. Thus, summary judgment is inappropriate on this claim.[4]

### III.   Breach of Fiduciary Duties, Breach of Contract, and Unjust Enrichment

Defendants also seek summary judgment on Plaintiff's claims for breach of fiduciary duties, breach of contract, and unjust enrichment. Defendants' arguments on these claims are dependent on the transfer of equity to Plaintiff being a gift. Mot. at 10–11 (arguing the breach of fiduciary duty claim fails because Plaintiff was not an owner of Pure Spectrum since Mr. Bell "never delivered—and subsequently revoked—the gift that he initially had indicated he would give to her"); 11 (stating the breach of contract claim fails because "[t]he promise to convey an interest in Pure Spectrum was a revocable gift, not a contract"); 11–12 (contending the unjust enrichment claim fails "because the promised interest in Pure Spectrum was a revocable gift, in recognition of past service to the company"). Since the Court has found that Defendants have not produced evidence eliminating any genuine dispute of material fact that the equity interest was a gift, summary judgment on these claims is also inappropriate.

### IV.   Fraud and Conspiracy to Commit Fraud

Although styled as a single count, Plaintiff brings claims of fraud and conspiracy to commit fraud against both Defendants. Am. Compl. ¶¶ 151–53. Defendants seek summary judgment as to both.

---

[4] In their reply, Defendants' argument for summary judgment changes slightly. Instead of arguing that the equity interest was a gift, Defendants contend that Plaintiff's "claim fails because a 'sale' of a security did not occur." Reply at 5. To the extent this argument is the same as the assertion that the transfer of equity was for past contributions, the argument fails for the reasons the Court has given already. To the extent this argument is novel, it is inappropriately raised for the first time in a reply brief. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[A] party waives issues and arguments raised for the first time in a reply brief.") (citation omitted). Even if the argument was not inappropriately raised, Defendants have failed to support it with citation to any legal authority that the alleged "gift" in this case would not constitute a "sale."

A.     Fraud

Similar to the other state law claims, Defendants seek summary judgment on the fraud claim based on the notion that Plaintiff was given a revocable gift. Mot. at 12–13 ("No fraud occurred here because Bell never offered to give Martin an interest in Pure Spectrum in exchange for her services; it was simply intended as a gift made in recognition of past service."). For the same reasons the Court has already explained, a genuine dispute of material fact precludes summary judgment on this claim.

B.     Conspiracy to Commit Fraud

On this claim, Defendants argue that Plaintiff has failed to establish an agreement by two or more persons since a corporate director cannot conspire with his own corporation. Mot. at 13. In response, Plaintiff argues that Mr. Bell and Pure Spectrum are "distinct and separate legal persons." Resp. at 12. Under Colorado law, a civil conspiracy is established when "(1) two or more persons; (2) come to a meeting of the minds; (3) on an object to be accomplished or a course of action to be followed; (4) and one or more overt unlawful acts are performed; (5) with damages as the proximate result thereof." *Luckyshot LLC v. Runnit CNC Shop, Inc.*, 2020 WL 5702281, at *7 (D. Colo. Sep. 24, 2020) (quoting *Ziegler v. Inabata of Am., Inc.*, 316 F. Supp. 2d 908, 918 (D. Colo. 2004)).

Defendants are correct that "[i]t is a well-settled tenet of corporate law that a director cannot conspire with the corporation which he serves." *Semler v. Hellerstein*, 428 P.3d 555, 562 (Colo. App. 2016), *rev'd on other grounds*, *Bewley v. Semler*, 432 P.3d 582 (Colo. 2018); *see also Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 52 (10th Cir. 1963) (noting "that a corporation and its employee do not constitute the 'two or more persons' required for a civil conspiracy") (citing *Lockwood Grader Corp. v. Bockhaus*, 270 P.2d 193, 196 (Colo. 1954)). Plaintiff has not

15

cited authority to the contrary. Because it is undisputed that Mr. Bell was the CEO of Pure Spectrum, ECF 61 at 3, ¶ 6, he could not, as a matter of law, conspire with Pure Spectrum. Accordingly, summary judgment is appropriate on this claim.

## CONCLUSION

Accordingly, Defendants' Motion [filed June 30, 2021; ECF 56] is **granted in part** and **denied in part**. Summary judgment is entered in favor of Defendants on Plaintiff's claims for copyright infringement and conspiracy to commit fraud.

Entered this 3rd day of January, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge